ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 2 1 2010

JAMES N. HATTEN, Clerk
By: _____
         Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No.: |
| v. ) | |
| ) | 1:10-CR-406 |
| MARIA CHRISTINA "META" ULLINGS ) | Violation: |
| ) | 15 U.S.C. § 1 |
| Defendant. ) | |
| ) | |

## INDICTMENT

The Grand Jury in and for the Northern District of Georgia, charges:

### DEFENDANT AND CO-CONSPIRATORS

1. Martinair Holland N.V. ("Martinair Cargo") is a corporation organized and existing under the laws of The Netherlands with its principal place of business in Amsterdam, Netherlands. Martinair Cargo's United States headquarters is located in Atlanta, Georgia. During the period covered by this Indictment, Martinair Cargo was engaged in the business of providing air transportation services for cargo in the United States and elsewhere.

2. MARIA CHRISTINA "META" ULLINGS is hereby indicted and made a Defendant on the charge in this Indictment. During the period from January 2001 until February 2006, Defendant was Senior Vice President Cargo Sales and Marketing with Martinair Cargo, and was based in Amsterdam, Netherlands. During the period covered by this Indictment, Defendant, on behalf of Martinair Cargo, was engaged in the business of providing air transportation services for cargo in the United States and elsewhere.

3. Various corporations and individuals, not made defendants in this Indictment, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

4. Whenever in this Indictment reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

## BACKGROUND OF THE OFFENSE

5. During the period covered by this Indictment, Martinair Cargo and Defendant's co-conspirators provided international air transportation services for cargo ("air cargo services") to and from the United States. Defendant's employer, Martinair Cargo, transported a variety of cargo, such as heavy equipment, perishable commodities, and consumer goods, on scheduled flights internationally, including to and from the United States. For air cargo services, Defendant, on behalf of Martinair Cargo, charged customers a rate that consisted of both a base rate and various fees, such as surcharges for fuel and post-September 11 security. The rates charged by Defendant's co-conspirators for air cargo services also included both a base rate and various fees. The amount of the base rate charged by Martinair Cargo and Defendant's co-conspirators could vary based on the type and weight of the shipment, the origin and/or destination of the shipment, and the nature of the goods or products being shipped. Similarly, the amount of certain surcharges levied by Martinair Cargo and Defendant's co-conspirators could vary based on the origin and/or destination of the shipment. The base rate and surcharges

charged to customers by Martinair Cargo and Defendant's co-conspirators for air cargo services are collectively referred to herein as "cargo rates."

## DESCRIPTION OF THE OFFENSE

6. Beginning at least as early as January 2001, and continuing until at least February 2006, the exact dates being unknown to the Grand Jury, Defendant and her co-conspirators entered into and participated in a conspiracy to suppress and eliminate competition by fixing and coordinating certain surcharges, including fuel surcharges, charged to customers located in the United States and elsewhere for international air shipments to and from the United States. The combination and conspiracy engaged in by Defendant and her co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

7. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendant and her co-conspirators, the substantial terms of which were to suppress and eliminate competition by fixing and coordinating certain surcharges, including fuel surcharges, on air cargo shipments to and from the United States.

## MANNER AND MEANS OF THE CONSPIRACY

8. For purposes of forming and carrying out the charged combination and conspiracy, Defendant and her co-conspirators did those things that they conspired to do, including, among other things:

    (a) participating in meetings, conversations, and communications in the United States and elsewhere to discuss prospective changes in certain surcharges to be charged for shipments to and from the United States;

3

    (b)    agreeing to fix, coordinating, and reaching understandings regarding certain surcharges to be imposed as components of the cargo rates;

    (c)    issuing announcements of increases on certain surcharges in accordance with the coordination, agreements and understandings reached;

    (d)    levying certain surcharges to and from the United States in accordance with the coordination, agreements and understandings reached;

    (e)    engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of implementing and monitoring the surcharge agreements, understandings and coordination; and

    (f)    accepting payment for shipments to and from the United States at collusive and noncompetitive rates.

## TRADE AND COMMERCE

9. During the period covered by this Indictment, proposals, contracts, invoices for payment, payments, and other documents essential to the provision of air cargo services were transmitted in interstate and foreign trade and commerce between and among the offices of Martinair Cargo and its customers located in various States and foreign countries.

10. During the period covered by this Indictment, Defendant and her co-conspirators transported substantial quantities of cargo, in a continuous and uninterrupted flow of interstate and foreign commerce, between various foreign countries and the United States, including through various U.S. airports to final destinations in various States.

11. During the period covered by this Indictment, the business activities of Defendant and her co-conspirators in connection with the air cargo services that are the subject of this

4

Indictment were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## JURISDICTION AND VENUE

12. The offenses charged in this Indictment were carried out, in part, in the Northern District of Georgia within the five years preceding the return of this Indictment.

In violation of Title 15, United States Code, Section 1.

Dated: Sep 21, 2010

A TRUE BILL:

_____
FOREPERSON

_____
SCOTT D. HAMMOND
Deputy Assistant Attorney General
Antitrust Division
U.S. Department of Justice

_____
MARC SIEGEL
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
SALLY QUILLIAN YATES
United States Attorney
Northern District of Georgia

_____
LISA M. PHELAN
Chief
National Criminal Enforcement Section
Antitrust Division
U.S. Department of Justice

_____
MARK R. ROSMAN
MARK C. GRUNDVIG
National Criminal Enforcement Section
Antitrust Division
U.S. Department of Justice
450 5th Street, NW, Suite 11300
Washington, DC 20530
(202) 305-1878

_____
WILLIAM D. DILLON

Atlanta Field Office
Antitrust Division
U.S. Department of Justice
75 Spring Street, SW, Suite 1176
Atlanta, GA 30303
(404) 331-7100